# CASES

## ARGUED AND DETERMINED

IN THE

# ST. LOUIS COURT OF APPEALS.

## MARCH TERM, 1877.

BELLE BARBER, Respondent, *v.* ST. LOUIS DISPATCH COMPANY, Appellant.

### March 2, 1877.

1. A fair, uncolored account of the whole proceedings had in public, before a court or public magistrate, is a privileged communication, whether the proceedings be preliminary, *ex parte*, or otherwise; but there must be so much publicity in the proceedings as is implied in a submission with a view to judicial action.

2. A publication of the contents of a petition for divorce which, though filed, has not been presented to a court at any sitting, with a view to judicial action, is not a privileged communication, especially if it makes statements of a kind which would disgrace or degrade, or imputes a crime to, plaintiff. Such a publication raises a legal presumption of malice.

3. The mere fact that a paper has been "filed" in the office of a clerk of a court will not make the publication of its contents a privileged communication.

4. In an action for libel, where the principal issue is upon the question of malice, it is error to instruct the jury that, "if they believe that the proceedings, an account of which was published by defendant, had taken place so long before the publication that it had ceased to be an item of current news, they will find for plaintiff."

APPEAL from St. Louis Circuit Court.
*Reversed and remanded.*

*Marshall & Barclay* and *Chandler & Young*, for appellant, cited: Const. 1865, Bill of Rights, sec. 15; Wag.

Stat. 420, sec. 16 ; Matthews v. Beach, 5 Sandf. 356 ; Cox
v. Coleridge, 1 Barn. & Cress. 37 ; The Commonwealth v.
Blanding, 3 Pick. 304 ; Skinner v. Powers, 1 Wend. 451 ;
National Bank v. Currie, 44 Mo. 91 ; Bank v. Murdock, 62
Mo. 70 ; 2 Greenl. on Ev., sec. 256 ; Sedgw. on Dam., ch.
3 ; Harper v. Indianapolis & St. Louis R. R. Co., 44 Mo.
488 ; Otto v. Bent, 48 Mo. 23 ; Detroit Free Press Co. v.
McArthur, 16 Mich. 447 ; Sawyer v. Hannibal & St. Joseph
R. R. Co., 37 Mo. 240 ; Lambert v. Craig, 12 Pick. 199 ;
Buckley v. Knapp, 48 Mo. 153 ; Freeman v. Tinsley, 50
Ill. 497.

*Everett W. Pattison*, for respondent, cited : Cincinnati
Gazette Co. v. Timberlake, 10 Ohio St. 548 ; Stanley v. Webb,
4 Sandf. 21 ; Matthews v. Beach, 5 Sandf. 264 ; Wason v.
Walter, Law Rep. 4 Q. B. 73, 85 ; Duncan v. Thwaites, 3
Barn. & Cress. 556 ; Edsall v. Brooks, 26 How. Pr.
426 ; Lewis v. Levy, 1 El. B. & E. 537 ; Ryalls v.
Leader, Law Rep. 1 Ex. 296 ; Otto v. Bent, 48 Mo. 23 ;
Gerren v. Hannibal & St. Joseph R. R. Co., 60 Mo.
410 ; Newman v. Lawless, 6 Mo. 279 ; Sears v. Wall, 49
Mo. 359.

HAYDEN, J., delivered the opinion of the court.

This is an action for an alleged libel upon the respondent,
published in the *St. Louis Dispatch*, a newspaper owned
and circulated by the appellant.- The petition states that
the plaintiff had formerly been the wife of one Lewis D.
Langley, and had, long before the date of the publication
complained of, procured a divorce from him, and was
restored to her maiden name of Belle Barber ; that she was
well known by the name of Belle Langley ; that defendant
was the proprietor of a newspaper called the *St. Louis Dis-
patch*, and published therein, of and concerning her, certain.
false, scandalous, and defamatory matter. The publication
complained of was the following :

" CONJUGAL INFELICITY.

" Lewis D. Langley, *formerly a resident of the town of*

*Litchfield, Ill.,* has brought suit for divorce from his wife, Belle Langley, accusing her of having, during the summer of 1871, committed adultery with George Pomeroy, a *conductor on the St. Louis & Indianapolis Railroad,* at Litchfield, and subsequently with him and divers other men in St. Louis. About a year after his marriage to defendant, which occurred August 28, 1869, a child was born, of which he denies being the father.''

The petition then alleges damages and asks for judgment.

The answer denied any knowledge or information as to the divorce of plaintiff and restoration to her maiden name. It admits the publication of the words and matter as charged, but alleges that the same was a fair and substantive report of a legal proceeding in the Circuit Court of St. Louis County, and that the publication was made in the course of its business, without intent to defame plaintiff.

Plaintiff, in her reply, denied that the publication was a fair and substantive report of a legal proceeding in said court, but alleged that the proceeding referred to was a mere *ex-parte* complaint filed in said court long anterior to the date of the publication, and that the same was accompanied by defamatory observations and comments; and denied that it was made in the ordinary course of business, or that it was the business of defendant, or its legal right, to publish and circulate defamatory matter of and concerning plaintiff, or that it had any right to publish the article complained of.

On the trial the plaintiff proved that she had been divorced from Louis D. Langley on January 18, 1873, and that her maiden name had been restored. The publication, as above given, was then read in evidence. The defendant offered evidence tending to prove that the managers of the newspaper did not know plaintiff, and had no desire or intention to injure her; that the proceedings of the courts were published only as news, and that the publication complained of was made in the usual course of defendant's business. The defendant introduced in evidence a transcript of the record in

the suit against the present plaintiff for divorce, by which it appears that on June 18, 1873, the petition was filed and summons issued ; that there was personal service, on June 25th, on the defendant in the case, Belle Langley ; that she filed her answer in the following October, alleging her prior divorce, and that thereupon Louis D. Langley dismissed his suit.   It was the petition in this last-named case that was the subject of the publication, and the appellant claimed that the publication was a fair report of the petition.   The respondent denied this, and insisted that by the insertion of the words which we have put in italics, and otherwise, the publication became something different from a mere statement of the facts as alleged in the petition.

At the request of the respondent the following instructions were given :

" 1.  The jury are instructed that the publisher of a newspaper has the right to publish, as an item of current news, a fair report of the proceedings of a court of justice, provided both the parties interested in such proceedings are before the court.   But he has no right to publish a report of a mere preliminary proceeding against a party, or of the statements made by one party in a petition filed for the purpose of instituting suit against another.   If, therefore, the jury believe that the defendant's newspaper contained a report of a preliminary proceeding against the plaintiff, or a report of statements contained in a petition filed by some third party against her for the purpose of instituting suit against her, they will find for plaintiff.

" 2.  The jury are instructed that the publisher of a newspaper has the right to publish only such proceedings of courts as are sufficiently recent to constitute them current news.   If, therefore, the jury believe that the proceeding an account of which was published by the defendant in this case had taken place so long before the publication that it had ceased to be an item of current news, they will find for the plaintiff.

" 3. The law presumes that a man intends the natural consequences of his acts. If, therefore, the jury believe that the natural consequence of the publication complained of was to defame and injure plaintiff, they may properly infer that such was the intention of defendant, and that the publication was maliciously made.

" 4. If the jury find for the plaintiff, they will assess her damages at such sum as will be a full compensation for the injury naturally and probably resulting from the publication complained of; and if the jury believe that the publication was malicious, they may give such sum by way of exemplary damages as they shall think proper, the whole amount of damages not to exceed ten thousand dollars."

The court gave the following instruction for the appellant:

" The jury are instructed that, if they believe from the evidence that defendant made the publication complained of without malice or intent to injure plaintiff, then the plaintiff is entitled to recover only such compensatory or actual damage as she has shown to have sustained by reason of said publication, and nothing more."

The following are the material instructions which were asked by the appellant and refused:

" 1. This court instructs the jury that on the pleadings and evidence in this case they will find for defendant.

" 2. If the jury believe from the evidence in this suit that the publication complained of was a fair report of the proceedings or petition filed in court in the case of *Louis D. Langley* v. *Belle Langley*, they will find for defendant.

" 3. The jury are instructed that, if they believe from the evidence that the publication complained of was made by defendant in the ordinary course of its business, as a fair and impartial report of a proceeding commenced in the Circuit Court of St. Louis County, and is a fair report of a bill for divorce, filed on the 18th day of June, 1873, by Louis D. Langley against Belle Langley, and was published

without malice or intent to injure plaintiff, they will find for defendant.

" 4. In order for the jury to find a verdict for the plaintiff in this case, they must first find that there was actual malice on the part of defendant in making the publication sued for, and there is no evidence of actual malice in this case."

The jury found for the plaintiff in the sum of $3,500. On a motion for new trial the court gave the plaintiff the option of remitting $1,000 of the damages, or having the motion sustained. The plaintiff remitting, judgment was entered for $2,500.

The general question here involved is whether the publication in the newspaper of the defendant belongs to the class of publications called privileged communications — that is, publications which would be libelous, but which are not so because the occasion and manner of the publishing are such as to rebut the inference of malice arising from the publication of matter which on its face is libelous. But the question on which the answer to this depends is not that which has been most discussed by counsel, namely, whether the same rule in reference to privileged communications that extends to trials where both parties are before the court extends also to ex-parte proceedings. This question has, no doubt, a bearing upon the legal issue before the court, but a solution of it in favor of the appellant will not necessarily involve the conclusion which the appellant desires to reach. Indeed, it may be granted that the general rule is as follows : Where a court or public magistrate is sitting publicly, a fair account of the whole proceedings, uncolored by defamatory comment or insinuation, is a privileged communication, whether the proceedings are on a trial or on a preliminary and ex-parte hearing. But the very terms of the rule imply that there must be a hearing of some kind. In order that the ex-parte nature of the

proceeding may not destroy the privilege — to prevent such a result — there must be at least so much of a public investigation as is implied in a submission to the judicial mind with a view to judicial action. This will be apparent if we regard the reason of the rule. Perhaps the earliest, certainly one of the best, expressions of the reason of the rule is that contained in the opinion of Lawrence, J., in *Rex* v. *Wright*, 8 Term Rep. 298, and often since quoted with approval. It is there stated, in substance, that though the publication of proceedings in courts of justice may severely reflect on individuals, yet such publications, if they contain true accounts, are not libels nor the subjects of action, because it is of great importance that the proceedings of courts of justice shall be known ; that the general advantage to the country/in having these proceedings made public more than counterbalances the inconvenience to the person whose conduct may be the subject of the proceedings. But the proceedings there alluded to were proceedings in open court, as is shown, not only by the judge's language, but by the case to which he makes direct reference and upon which his remarks hinge, the case of *Curry* v. *Walter*, 1 Esp. 456, where the publication was of a speech made in open court, in printing which in *The Times* the supposed libel consisted. So, where it is said " it is of great consequence that the public should know what takes place in court, and the proceedings are under the control of the judges " (*per* Lord Campbell, in *Davison* v. *Duncan*, 7 El. & Bl. 231) ; or, " we ought to make as wide as possible the right of the public to know what takes place in any court of justice (*per* Chief Baron Pollack, in *Ryalls* v. *Leader*, Law Rep. 1 Ex. 299), it is apparent that judicial proceedings in open court are spoken of. Indeed, the English cases on which the appellant most confidently relies are all cases of proceedings in open court, or before a public magistrate sitting as a court. *Curry* v. *Walter* has been noticed above. In *Lewis* v. *Levy*, El. B. & E. 537, the plea was that the pro-

ceedings took place "before a public court of justice, to wit, a justice of the peace then sitting and holding a public court;" that "the proceedings were had in the said public court," "upon the hearing of the said charge," etc. Lord Campbell, in denying the position that the privilege must be confined to the proceedings of superior courts, said: "But on such a question the dignity of the court cannot be regarded; and we must look only to the *nature of the alleged judicial proceeding* which is reported." The decision proceeds distinctly upon the ground of a hearing, an investigation, a judicial inquiry and action. Lord Campbell further remarked: "But although a magistrate, upon any preliminary inquiry respecting an indictable offense, may, if he thinks fit, carry on the inquiry in private, and the publication of any such proceedings before him would undoubtedly be unlawful, we conceive that, while he continues to sit *foribus apertis*, admitting into the room where he sits as many of the public as can be conveniently accommodated, and thinking that the course is calculated for the investigation of truth and the satisfactory administration of justice (as in most cases it certainly will be), we think the court in which he sits is to be considered a public court of justice. In other cases it is stated that the publication is a mere extension of the area of publicity; that, while the court-room can contain but few persons, the public press indefinitely extends the field of notoriety. An examination of the later cases — *Pinero* v. *Goodlake*, 15 L. T. (N. s.) 676; *Wason* v. *Walter*, Law Rep. 4 Q. B. 93, where Lord Cockburn's decision is based upon the analogy between public proceedings in courts of justice and public debates in the Houses of Parliament, and the advantage to the people that it should be known what passes within their walls; *Hunter* v. *Sharpe*, 4 F. & F. 983 — will show that a hearing and an inquiry in public are essential to bring the publication within the rule as to privileged communications. It may be safely asserted that, if a London newspaper were to publish the one-sided

statements of a bill filed in the Divorce Court, merely upon
the filing, and previous to its coming before that court for
judicial action, the Court of Queen's Bench would not, upon
the authority of *Curry* v. *Walter*, or *Lewis* v. *Levy*, or
*Wason* v. *Walter*, decide that such a publication was privi-
leged. Those cases are authority to the contrary, not only
upon their facts, but by reason of the limitations which are
expressly laid down in them. He who seeks to stretch a
wholesome rule beyond its legitimate application attacks
the rule itself; and the able judges who decided those cases
were too good logicians to impair the force of their own ar-
guments by extending an exceptional rule to cases where
the reason that creates the exception does not exist. So,
too, in the case of *Ackerman* v. *Jones*, 37 N. Y. Superior
Court, 43, the publication expressly described a public ap-
pearance and statement of a criminal charge before a magis-
trate, and it appears that the affidavit was presented to the
magistrate, was considered and acted upon by him, and that
process issued upon it. The court, in its opinion, said:
" The affidavit in question became a part of the regular
judicial proceedings in a criminal suit by the people on the
complaint of Burleigh."

Enough has been said to show that, upon the authorities,
the present publication is not within the rule in regard to
privileged communications. The publication was not merely
of the fact that a petition for divorce had been filed, but
it purported to give the contents of a petition which had
never been brought before the court at any sitting, or with
a view to judicial action. No proceeding in open court had
taken place, and in fact no proceeding in open court ever
did take place, in the suit for divorce, from the time of the
filing of the petition to the time of the dismissal of the suit.
The statements made in this publication were not only of a
kind to disgrace and degrade the plaintiff in the estimation
of the community, but they impute an act which may be a
crime under the statutes of this State. *Prima facie* the

words are actionable (Wag. Stat. 519, sec. 1; *Stieber* v. *Wensel*, 19 Mo. 513), and their use raises the presumption of malice — that is, not of any actual design to injure, but of that wrongful intention which the law presumes to be the concomitant of an act which it condemns as wrong. This being the case, is there any great public advantage overriding the injury that would ensue in cases of this kind to individuals? That injury is apparent. If every paper on which a clerk of court makes the word "filed" is a privileged communication, and the person who spreads its contents broadcast before the public is exempt from the penalties which the law imposes on those who injure the reputations and property of others, consequences most serious will follow. A court may well pause before it makes a decision to this effect, unsanctioned, as such a decision would be, by any authority. Papers may be filed as declarations or petitions which are filled with libelous matter. Their mere filing is no guarantee that the plaintiff intends to go to trial upon them. They may be so composed as to blast reputations and ruin businesses. They might be published with the most malicious designs, yet, if privileged, the effect would be, practically, to deprive the injured party of redress. The anomaly would be presented that, while the law would afford the defendant a remedy against the person who brought the suit (for the latter would be liable in damages for a malicious action), it would afford no redress against the libeler, whose publication may have produced the greater injury. Nor, if a publication is to be privileged merely because a petition is on the files, is it easy to see why the filing of an affidavit, or deposition, even though it may be totally inadmissible in evidence and may be substantially stricken from the files, does not confer a like exemption. When a matter is before a court, upon a hearing, subject to the control and direction of the court, the right of publication may well be allowed. But where a paper is filed by a private person, perhaps not even with

intent to produce an investigation, he who chooses to publish it should do so at his own risk.  It is better that a craving, often anything but wholesome, should be disappointed, than a reputation assailed.  If the charges of the petition are not baseless, they will soon be made the subject of judicial action, in one form or another, and when they are made such, the law, from motives of public policy, makes all proper publications in regard to them privileged communications.

Though the first instruction given for the respondent is not a strictly accurate expression of the law, yet, upon the facts of this case, the giving of it would not have injured the appellant, except so far as it contains the expression, " as an item of current news."  But whatever error exists in respect to those words is more plainly repeated in the second instruction.  The first clause of this tells the jury that the publisher of a newspaper has a right to publish only such proceedings of courts as are sufficiently recent to constitute them current news.  In stating this the court below evidently mistook the purpose or office of an allegation in the defendant's answer.  The defendant, to rebut the presumption of malice, alleged the account was published merely as an item of news.  But there was no obligation on the defendant to prove that which is implied by the instruction, nor does the instruction express any rule of law.  If the filing of the petition was not a recent event at the time of the publication, the jury might have drawn inferences from this fact; but the respondent was not entitled to such an instruction as that numbered two.  Not only does it state a proposition which is not a rule of law, but, disregarding all the other issues in the case, it tells the jury to find for the plaintiff, if they " believe that the proceeding, an account of which was published by the defendant in this case, had taken place so long before the publication that it had ceased to be an item of current news."  This issue may have been fairly raised, but it was not the only, nor even

the principal, issue in the case. It cannot be said that the error of this instruction did not injure the appellant, unless we indulge in the supposition that the jury conceived the instruction to mean something different from what it says. This hypothesis we can hardly proceed upon. If the jury understood the instruction to mean what it says, the action of the court below in giving it may have injured the appellant, and the judgment must be reversed for this error.

The question of malice was for the jury, on all the facts in evidence. It was not for the court to say whether the defendant had by its testimony rebutted the presumption arising from the publication. But the giving of the second instruction asked by the respondent virtually took the issue as to malice out of the case.

There was no error in giving the instruction as to damages.

The judgment of the court below is reversed and the case remanded. All the judges concur.