CHARLES COWLEY *vs.* ROYAL M. PULSIFER & others.

Middlesex.   March 10. — June 27, 1884.   DEVENS & COLBURN, JJ., absent.

The publication in a newspaper of the contents of a petition for the removal of an
   attorney from the bar, filed in the office of the clerk of this court in vacation,
   but which has not been presented to the court or entered on the docket, and
   which includes actionable allegations unless justified, although the publication
   is a fair and correct report of the petition, is not privileged.

   HOLMES, J.   This is an action against the owners and pub-
lishers of the Boston Herald for a libel printed in that news-
paper.   The alleged libel was a report of the contents of a
petition for the removal of the plaintiff, an attorney at law,

from the bar. The report was fair and correct, but the petition included allegations which would be actionable unless justified. In their answer the defendants rely upon privilege; and the main question raised by the plaintiff's exceptions is whether the publication was privileged, as ruled by the court below.

The petition had been presented to the clerk of the Supreme Judicial Court for the county of Middlesex in vacation, had been marked by him, "Filed February 23, 1883," and then or subsequently had been handed back to the petitioner, but it did not appear that it ever had been presented to the court or entered on the docket.

We are of opinion that the foregoing circumstances do not constitute a justification, and that the defendants do not bring themselves within the privilege admitted by the plaintiff to attach to fair reports of judicial proceedings, even if preliminary or *ex parte.*

No binding authority has been called to our attention which precisely determines this case, and we must be governed in our conclusion mainly by a consideration of the reasons upon which admitted principles have been established.

We begin by recalling the familiar distinction between the privilege of the petitioner in respect of filing his petition, and the privilege of the same or any other person in respect of subsequently printing it in the newspapers, or otherwise publishing it to strangers who have no interest in the matter. This distinction, we believe, has always been recognized, both before and since the case of *Lake* v. *King,* 1 Saund. 120, 133 ; *S. C.* 1 Lev. 240. *Weston* v. *Dobniet,* Cro. Jac. 432. *Rex* v. *Creevey,* 1 M. & S. 273, 280. *M' Gregor* v. *Thwaites,* 3 B. & C. 24, 31, 35. *Flint* v. *Pike,* 4 B. & C. 473, 481. *Commonwealth* v. *Blanding,* 3 Pick. 304, 317. We therefore lay on one side all cases which only tend to show that the petitioner incurred no liability by handing his petition to the clerk, and by whatever publication that involved, and we shall assume, for the purposes of this case, that he incurred no liability by so doing.

The privilege set up by the defendants is not that which attaches to judicial proceedings, but that which attaches to fair reports of judicial proceedings. Now what is the reason for this latter? The accepted statement is that of Mr. Justice

Lawrence in *Rex* v. *Wright*, 8 T. R. 293, 298: "Though the publication of such proceedings may be to the disadvantage of the particular individual concerned, yet it is of vast importance to the public that the proceedings of courts of justice should be universally known. The general advantage to the country in having these proceedings made public, more than counterbalances the inconveniences to the private persons whose conduct may be the subject of such proceedings." See also *Davison* v. *Duncan*, 7 El. & Bl. 229, 231 ; *Wason* v. *Walter*, L. R. 4 Q. B. 73, 88 ; *Commonwealth* v. *Blanding*, 3 Pick. 314.

The chief advantage to the country which we can discern, and that which we understand to be intended by the foregoing passage, is the security which publicity gives for the proper administration of justice. It used to be said sometimes that the privilege was founded on the fact of the court being open to the public. Patteson, J., in *Stockdale* v. *Hansard*, 9 A. & E. 1, 212. This, no doubt, is too narrow, as suggested by Lord Chief Justice Cockburn in *Wason* v. *Walter, ubi supra;* but the privilege and the access of the public to the courts stand in reason upon common ground. *Lewis* v. *Levy*, El., Bl. & El. 537, 558. It is desirable that the trial of causes should take place under the public eye, not because the controversies of one citizen with another are of public concern, but because it is of the highest moment that those who administer justice should always act under the sense of public responsibility, and that every citizen should be.able to satisfy himself with his own eyes as to the mode in which a public duty is performed.

If these are not the only grounds upon which fair reports of judicial proceedings are privileged, all will agree that they are not the least important ones. And it is clear that they have no application whatever to the contents of a preliminary written statement of a claim or charge. These .do not constitute a proceeding in open court. Knowledge of them throws no light upon the administration of justice. Both form and contents depend wholly on the will of a private individual, who may not be even an officer of the court. It would be carrying privilege farther than we feel prepared to carry it, to say that, by the easy means of entitling and filing it in a cause, a sufficient foundation may be laid for scattering any libel broadcast with impunity.

See *Sanford* v. *Bennett*, 24 N. Y. 20, 27; *Lewis* v. *Levy*, *ubi supra; Barber* v. *St. Louis Dispatch Co.* 3 Mo. App. 377.

We waive consideration of the tendency of a publication like the present to create prejudice, and to interfere with a fair trial. *Barrows* v. *Bell*, 7 Gray, 301, 312, 316. *In re Cheltenham & Swansea Railway Carriage & Wagon Co.* L. R. 8 Eq. 580. *Tichborne* v. *Mostyn*, L. R. 7 Eq. 55, n. *Read & Huggonson's case*, 2 Atk. 469; *S. C. nom. Roach* v. *Garvan*, 2 Dick. 794. Neither shall we discuss the question what limitations there are, if any, to the requirement that the proceeding must have been acted on and decided. *Barrows* v. *Bell, ubi supra. Delegal* v. *Highley*, 3 Bing. N. C. 950, 963. For apart from the distinction between what takes place in open court and the contents of papers filed in the clerk's office, it might be said that these considerations apply with equal force to a report of proceedings in court published from day to day as they take place, and that nevertheless it has been held that reports might be so published, and that it is not necessary to wait until a trial is completed. *Lewis* v. *Levy*, *ubi supra.* See *Usill* v. *Hales*, 3 C. P. D. 319, 325. The practice of publishing reports in this manner is universal with us, and we may concede that it might happen that the proceedings of the first day stopped with the reading of the pleadings, or, in this case, of the petition, and that a fair report under those circumstances would be privileged, without considering whether a publication of the first day's proceedings could be made actionable by relation if the subsequent ones should be omitted.

For the purposes of the present case, it is enough to mark the plain distinction between what takes place in open court, and that which is done out of court by one party alone, or more exactly, as we have already said, the contents of a paper filed by him in the clerk's office. This distinction, although not established by them, derives an indirect sanction from the cases which have turned on the question whether the proceeding — for instance, the examination of a bankrupt — took place in a public court. *Ryalls* v. *Leader*, L. R. 1 Ex. 296. *Lewis* v. *Levy*, *ubi supra.* See also *Fleming* v. *Newton*, 1 H. L. Cas. 363, 378.

It is further to be noticed that the language of Chief Justice Shaw in *Barrows* v. *Bell, ubi supra*, clearly implies that the privilege claimed by the defendants does not protect them.

He says that a fair statement of the proceedings, "when they have been acted upon and decided, made with an honest view of giving useful information, and where the publication will not tend to obstruct the course of justice and interfere with a fair trial, is not a libellous publication." In the English Chancery it is held to be a contempt of court to publish a pleading of one party in a newspaper, or, it would seem, the whole proceedings, before the matter has come on to be heard. *In re Cheltenham & Swansea Railway Carriage & Wagon Co. ubi supra. Bowden* v. *Russell*, 46 L. J. (N. S.) Ch. 414, 416. *Cann* v. *Cann*, 3 Hare, 333, n. ; *S. C.* 2 Ves. Sr. 520 ; 2 Dick. 795. A contempt of court cannot be privileged, and we see no reason to doubt that an action could be maintained for such a publication. *Bowden* v. *Russell, ubi supra.* Nor do we see any reason for confining the liability to proceedings in equity. " If one exhibit a scandalous bill, if the court hath jurisdiction of such matters, an action lies not : otherwise it is, if the court have not jurisdiction ; or having, if the party publish his bill abroad, the said bill being false." *Weston* v. *Dobniet, ubi supra.* See further *Delegal* v. *Highley,* and *Barber* v. *St. Louis Dispatch Co., ubi supra.*

We have placed only a qualified reliance on the cases cited, because some of them were decided too early to be conclusive, and those on the question of contempt have been placed on grounds not perhaps convincing with regard to the present question. But they lend strong support to our decision.

It may be objected that our reasoning tacitly assumes that papers properly filed in the clerk's office are not open to the inspection of the public. We do not admit that this is true, or that the reasons for the privilege accorded to the publication of proceedings in open court would apply to the publication of such papers, even if all the world had access to them. But we do not pause to discuss the question, because we are of opinion that such papers are not open to public inspection. A different conclusion might be drawn from a hasty reading of the Pub. Sts. *c.* 37, § 13, but the county records or files, which are there ordered to be open for public inspection and examination, and of which any person may take copies, are the records and files of the county, not of the courts of the Commonwealth within and for that county. We see no reason to suppose that the

Public or General Statutes were intended entirely to change the scope of the original enactments which they embodied. These were the Sts. of 1851, *c.* 161, and 1857, *c.* 84, both of which will be seen on inspection to have no reference to the records of the courts.

We have assumed, for the purposes of this discussion, that the petition was rightly filed, and that the defendants were entitled to any benefit which they might derive from that circumstance. But we do not mean to intimate any opinion one way or the other upon the question.  *Exceptions sustained.*

*C. Cowley, pro se.*

*S. Lincoln,* for the defendants.