Ilsley, Respondent, vs. Sentinel Company and others, Appellants.

*September 4—October 15, 1907.*

*Libel: Privileged communications: Common law: Statutes: Construction: "Judicial proceeding."*

1. At common law publication of a fair, correct, and good-faith report of a judicial or legislative proceeding is privileged equally in favor of every one, newspapers as well as, but no more than, others.

2. Sec. 4256a, Stats. (1898), in connection with prior decisions of the supreme court, indicates that at least one purpose of the statute was to extend the privilege in newspaper reporting beyond judicial proceedings and proceedings of the legislature with which the common law stopped.

3. At common law privileged "judicial proceedings" did not include anything beyond the actual hearing in presence of a judicial officer and his decision announced thereon.

4. The publication of pleadings or other preliminary papers to which the attention of no judicial officer has been called and no judicial action invited thereon is not within the privilege accorded publication of judicial proceedings in the absence of a statute modifying the rules of the common law.

5. The public has the right to know what its courts and legislature do, and since this cannot be intelligently reported without stating the charges and issues upon which their action is based, the latter may be reported also, although as an incidental result the fact of defamatory charges against some individual becomes public to his injury.

6. While under some circumstances the words "proceeding" or even "judicial proceeding" may be used in a sense to include even the service or filing of a pleading, the phrase "report of any judicial proceeding" in sec. 4256a, Stats. (1898), must be presumed to have been used in the definite significance it had attained in the law of libel: the actual hearing in the presence of a judicial officer and his decision announced thereon.

7. While sec. 4256a, Stats. (1898), did not change the law as preexisting governing "judicial proceedings," its enactment cannot be said to be useless, since it added to reports entitled to privilege those of other public official proceedings and also undertook to regulate all reports whether of judicial, legislative, or other proceedings in the matter of headlines and com-

ments and to provide for mitigation of damages in case of retraction.

8. In an action for the publication of libelous matter it appeared from the complaint, among other things, that the alleged libel consisted of the publication in a newspaper of extracts from a complaint in an action which had proceeded no further than service and filing of that pleading, the falsity of the statements of the extracts being alleged. *Held*, on demurrer, that nothing appeared in the complaint showing the defamatory matter privileged, and hence that a cause of action was stated.

9. In such case, even though the newspaper report be held to be privileged, need not have been by way of quotation, but might be condensed and expressed in the words of the reporter, yet the reporter was limited to reporting the fact of the assertion, and the addition of headlines and comments as "Defamed and Libeled," "Used Organ and Grand Jury in Effort to Ruin Plaintiff," "Used Jury to Injure Him," if capable of being understood as declaring the fact of a conspiracy to injure, use of jury, etc., exceed any privilege to report.

APPEAL from an order of the circuit court for Milwaukee county: WARREN D. TARRANT, Circuit Judge. *Affirmed.*

Appeal by defendants from order overruling demurrer to complaint charging defendants, publishers of the Milwaukee Sentinel, with libel, in that on September 9, 1905, they, with intent to defame, maliciously published false and defamatory matter generally to the effect that the plaintiff, together with others, had been sued by the defendant *Pfister;* under headlines identifying the various defendants in that action, stating, "Are Sued for Conspiracy:" "Defamed and Libeled:" "Used Organ and Grand Jury in Effort to Ruin Plaintiff:" "Used Jury to Injure Him:" "Were Taken by Surprise:" "Papers Served on Defendants:" *"Text of the Complaint."* These were followed by extracts from a complaint charging the several defendants, including the plaintiff in this action, with having conspired to injure the plaintiff in that action, *C. F. Pfister,* by instituting unfounded prosecutions against him and publishing defamatory matter in public prints and maliciously procuring to be issued an

unfounded indictment against him, and otherwise; also, for a second cause of action, that on February 6, 1906, defendants caused to be published in the Sentinel another article asserting generally the dismissal of *C. F. Pfister's* former action and the institution of a new one of much the same character, various extracts from the complaint in which are quoted and contain similar defamatory matter as against plaintiff in this action.

For the appellants there was a brief by *Quarles, Spence & Quarles,* attorneys, and *George Lines,* of counsel, and oral argument by *Mr. Lines.*

*Robert N. McMynn,* for the respondent.

Dodge, J. 1. That the article published by appellant contains defamatory charges against the plaintiff which, but for some privilege, would be libelous if false, is not controverted, but privilege is claimed by virtue of sec. 4256a, Stats. (1898), which provides:

"The proprietor, publisher, editor, writer or reporter upon any newspaper published in this state shall not be liable in any civil action for libel for the publication in such newspaper of a true and fair report of any judicial, legislative or other public official proceeding authorized by law or of any public statement, speech, argument or debate in the course of such proceeding."

Among the answers made to this claim is a contention that a mere pleading, filed but not in any wise presented to any judicial officer as basis for any action by him, is not included within the matter to which the statute accords privilege. That contention is fundamental to this action, for there is nothing in the complaint to suggest that the pleadings summarized or quoted in the published article had reached any stage beyond that of service on the defendants in the conspiracy action, or, at most, that of filing with the clerk of court. The latter fact nowhere appears at all clearly, and

probably, if fatal to the complaint, could not be assumed upon demurrer under the rule of liberal construction indulged in favor of pleadings so attacked, but we do not deem the fact of filing inconsistent with the conclusion we reach, and shall therefore treat the complaint as if that fact appeared. At common law, publication of a fair, correct, and good-faith report of a judicial or legislative proceeding was privileged equally in favor of every one, newspapers as well as, but no more than, others. Odgers, Libel & S. (4th Eng. ed.) 291; *Usill v. Hales,* L. R. 3 C. P. Div. 319; *Lewis v. Levy,* El., Bl. & El. 537, 560; *Kimber v. Press Asso.* [1893] 1 Q. B. 65; Townsh. Slander & L. (4th ed.) § 229; *Connor v. Standard P. Co.* 183 Mass. 474, 67 N. E. 596; *Stuart v. Press Pub. Co.* 83 App. Div. 467, 82 N. Y. Supp. 401; *Buckstaff v. Hicks,* 94 Wis. 34, 39, 68 N. W. 403. Some questions having arisen as to the kind of proceedings within this privilege and as to the tribunals or meetings the proceedings of which were privileged, statutes were enacted having considerable resemblance to our own in New York in 1854, now sec. 1907, N. Y. Code Civ. Proc., and in England in 1888. See history in Odgers, Libel & S. (4th Eng. ed.) 759 *et seq.* Our statute was enacted originally in 1897, quite immediately after a decision of this court denying any privilege to reports of city council proceedings. *Buckstaff v. Hicks, supra.* Such history indicates that at least one purpose of the legislation was to extend the privilege in newspaper reporting beyond judicial proceedings and proceedings of the legislature with which the common law stopped. An examination of all cases in England discloses none in which the privileged "judicial proceeding" included anything beyond the actual hearing in presence of a judicial officer and his decision announced thereon. A compendious collection of such cases is made in ch. 11 of Odgers, Libel & S. (4th Eng. ed.). A negative view has been often announced in the United States, and applied to exclude any

privilege in publication of mere pleadings before any judicial hearing involving them. *Stanley v. Webb,* 4 Sandf. 21; *Sanford v. Bennett,* 24 N. Y. 20; *Cincinnati Gazette Co. v. Timberlake,* 10 Ohio St. 548; *Sutton v. A. H. Belo & Co.* (Tex. Civ. App.) 64 S. W. 686; *Cowley v. Pulsifer,* 137 Mass. 392; *Stuart v. Press Pub. Co.* 83 App. Div. 467, 82 N. Y. Supp. 401; *Park v. Detroit F. P. Co.* 72 Mich. 560, 40 N. W. 731; *Barber v. St. Louis D. Co.* 3 Mo. App. 377; *Billet v. Times-Democrat Pub. Co.* 107 La. 751, 32 South. 17; *Archambault v. Great N. W. Tel. Co.* 4 Mont. Q. B. 122; *American Pub. Co. v. Gamble,* 115 Tenn. 663, 679, 90 S. W. 1005; 18 Am. & Eng. Ency. of Law (2d ed.) 1044. Neither appellants' nor our own research has disclosed any decision which, fairly considered, supports any such privilege. Two cases are cited: *Pittock v. O'Niell,* 63 Pa. St. 253, and *Thompson v. Powning,* 15 Nev. 195. In the first the question was passed without decision, by the remark that the publication might have been privileged if fair and correct. In the second it was held no evidence of express malice for defendant to publish the plaintiff's own complaint in the very libel action on trial, a ruling that obviously involved different considerations. Clearly the overwhelming consensus of authority sustains the view that the publication of pleadings or other preliminary papers to which the attention of no judicial officer has been called and no judicial action invited thereon is not within the privilege accorded publication of judicial proceedings in absence of statute modifying the rules of the common law.

The propriety of such exclusion is equally obvious when we consider the reasons on which rests the privilege to publish reports of true judicial or legislative proceedings. The whole foundation for that privilege is the interest of the public to know the conduct of judicial officers and legislators, to the end that misconduct or incapacity may be promptly discovered and remedied. This end has been deemed so vital to

public welfare and to the maintenance of good government as to demand subordination of the interest of individuals adverse to the publicity of defamatory statements against them which must otherwise control. There is, however, no right in the public to know that A. charges B. with unworthy or criminal conduct, even in court, as a fact by itself; that is mere gossip or scandal. The public at most needs to know what its court does, and, since this cannot be intelligibly reported without stating the charges and issues upon which the court's action is based, the latter may be reported also, although as an incidental result the fact of defamatory charges against some individual becomes public to his injury.

"The general advantage to the country in having these proceedings made public more than counterbalances the inconvenience to private persons whose conduct may be the subject of such proceedings." *Rex v. Wright,* 8 Term R. 293, 298; *Wason v. Walter,* L. R. 4 Q. B. 73, 87.

The fundamental reason is the same which demands that proceedings of courts and legislatures shall be open to the public. *Stockdale v. Hansard,* 9 Ad. & El. 1; *Lewis v. Levy,* El., Bl. & El. 537; *Cowley v. Pulsifer,* 137 Mass. 392, 394. When this reason is understood, it obviously fails wholly to justify publication of defamatory contents of mere pleadings and other preliminary papers which have simply been filed in the clerk's office. In those the public have no concern until they are actually brought to the attention of some judicial officer and some action on his part is demanded based thereon. Then, for the first time, is public interest involved to know what action he takes. The distinction is too obvious for extended comment. The fact that any one who wishes may, on other grounds, have access to such papers for examination, if any such right exists, has no bearing on the question. The degree of publicity likely to be so accomplished is trifling in comparison with general publication, and, at best, results incidentally from a public policy of

nondiscrimination by a mere clerk which is in no wise promoted by spreading abroad the information which one may acquire by such inspection. In absence of dominating public interest, surely the individual ought not to be subjected to such assaults upon his character and reputation as may result from general publication of charges which may thus be made. The author of a pleading is broadly privileged in asserting his claims against his opponent, and may, and often does, make the most damaging charges with little or no foundation. He may make them with no expectation of proving them, nay, with no purpose of ever proceeding further with his action, and yet furnish most salacious matter for the enterprising reporter upon whose industry the pleader may indeed have counted to render his charges effective to injure his opponent before the public, though he never expected any effect for them in court. The great peril of injury to individuals has been vigorously portrayed in several of the cases above cited. *Cowley v. Pulsifer, supra; Park v. Detroit F. P. Co.* 72 Mich. 560, 40 N. W. 731; *Barber v. St. Louis D. Co.* 3 Mo. App. 377; *Stuart v. Press Pub. Co.* 83 App. Div. 467, 82 N. Y. Supp. 401.

As a result of what has preceded, we are fully convinced that at common law no privilege could have sheltered the publication in question; and the next inquiry is whether any is conferred by our statute above quoted. The reports thereby privileged of publication are of a judicial proceeding or any public statement in such proceeding. Counsel argues that a judicial proceeding in this state includes everything involved in a civil action, which, he says, is a proceeding in a court of justice and therefore a judicial proceeding, and cites instances of such use of the term. *Hogan v. State,* 30 Wis. 428; *Schultz v. Strauss,* 127 Wis. 325, 106 N. W. 1066. We have no doubt that under some circumstances the words "proceedings" or even "judicial proceedings" may be used in a sense to include even the service or filing of a pleading,

but the phrase "judicial proceeding," or rather "report of a judicial proceeding," had attained a perfectly definite significance in the law of libel, the subject which the legislature were attempting to regulate, and every presumption supports the view that they then used it in that sense. That they did so is confirmed by its association with "*other public* official proceeding," also by reference to "public statement, argument," etc. If it be argued that, upon such construction, the statute did not change the law as pre-existing and its enactment was vain, it is answered that the statute added to reports entitled to privilege those of other public official proceedings and also that it undertook to regulate all reports whether of judicial, legislative, or other proceedings in the matter of headlines and comments and to provide for mitigation of damages in case of retraction, so that, although no new grant of privilege was accomplished by the enactment, yet other legislative purpose is obviously wholly consistent with mere declaration of an existing immunity. See *Smith v. Burlington,* 129 Wis. 336, 339, 109 N. W. 79.

Unless obvious beyond reasonable doubt, we should be slow to believe in an intent to authorize and privilege publications so fraught with injury to individuals and for which justification in public policy or other reason is so entirely wanting. We do not find such purpose obvious, and therefore cannot think that the legislation in question goes beyond the rule of the common law in sheltering a report of any step in an action which does not in some way involve at least the attention and invited action of some judicial officer. We are convinced that the filing of pleadings or other papers in the clerk's office is not of that character. Hence we must hold that nothing appearing in the complaint in this action shows that the defamatory publication set forth is entitled to any privilege, and that, since falsity is alleged, a cause of action is stated.

2. Were a different conclusion reached upon the subject of privilege, we should still find great difficulty in holding

that the headlines and comment contained in the article published were incapable of a libelous meaning to the reader. Conceding that a report of a proceeding, to be privileged, need not be by way of quotations, but may be condensed and expressed in the words of the reporter, yet that does not permit him to declare as on his own authority the existence of facts which are only asserted in the proceeding. He is limited to reporting the fact of the assertion. Such utterances as "Defamed and libeled," "Used organ and grand jury in effort to ruin plaintiff," "Used jury to injure him," in their context are somewhat ambiguous. They might be understood by a reader as only asserting that the complaint which had been filed contained such allegations, and, if so understood, might not transcend permissible reporting. But if they are even capable of being understood as declaring the fact of conspiracy to injure, use of jury, etc., they would exceed any privilege to report. In view of our conclusion on the broader question, we perhaps need not discuss this further than to suggest the caution demanded of a reporter of privileged public proceedings when he enters the field of comment and summarization, and to call attention to a few of the decided cases, and especially to the warning of our own statute—sec. 4256a, Stats. (1898)—that no reporter is protected against libelous matter "contained in any headline or headings to any such report, or libelous remark or comments added or interpolated in any such report or made and published concerning the same, which remarks or comments were not uttered by the person libeled or spoken concerning him in the course of such proceeding." Odgers, Libel & S. (4th Eng. ed.) 302 *et seq.; Pfister v. Sentinel Co.* 108 Wis. 572, 84 N. W. 887; *Stanley v. Webb,* 4 Sandf. 21; *Thomas v. Croswell,* 7 Johns. 264; *Edsall v. Brooks,* 17 Abb. Pr. 221.

*By the Court.*—Order affirmed.