# Parsons *v.* Age-Herald Pub. Co.

## *Libel and Slander.*

(Decided February 6, 1913.    61 South. 345.)

1. *Libel and Slander; Privileged Communication; Judicial Proceedings.*—A fair and accurate newspaper report of judicial proceedings, published in good faith and not to injure the persons concerned, is privileged, although it contains matter that is false, defamatory and injurious.

2. *Same.*—Newspapers have no particular privilege with reference to the publication of libel, but are liable as ordinary persons.

3. *Same.*—While newspapers may discuss and criticise without liability the conduct and motives of public officers, if their comments are fair and reasonable, they are liable for false aspersions on the character of such officer, and can justify only by proving the truth of the statements.

4. *Same.*—Publication of pleading or other perliminary papers in an action or proceeding, to which the attention of no judicial officer has been called, and on which no judicial action has been invoked, is not within the privilege accorded at common law to the publication of judicial proceedings.

5. *Same.*—The report of a grand jury concerning the alleged official misconduct of a constable, was not a judicial proceeding within the rule of qualified privileges in the law of libel at common law, where such report was not found to establish an impeachable offense.

6. *Same.*—A fair statement in a newspaper of the contents of the grand jury reports charging an official with certain improper acts not sufficient to constitute an impeachable offense, was qualifiedly privileged, if published in good faith, without malice, and in the belief that the matter was true, although the report was beyond the authority of the grand jury.

7. *Same.*—Libelous imputations in a grand jury report on private citizens or public officers, not touching their fiitness for office, or their fidelity to the public service, or the propriety of their official acts, are not properly matters of public interest, and are not privileged.

8. *Same.*—Where a grand jury's report contains an attack on a public officer, but has not been duly published by the grand jury itself in open court, privilege does not attach to a publication thereof by a newspaper.

9. *Same.*—The publication of matters which are forbidden by law or by order of the court as being improper for publication, is not privileged when published by third persons.

10. *Same.*—Where matter is published from a grand jury's report after filing, without comment or criticism, it must be deemed as a matter of law, fair and accurate, in an action for libel.

[Parsons v. Age-Herald Pub. Co.]

11. *Same.*—The rule that fair comment and criticism on public officers is privileged, is limited to comment or criticism on admitted or proven facts or conduct, and does not extend to the expression of adverse criticism on new facts.

12. *Same.*—Whether comment or criticism on the conduct of a public officer was privileged, is a question of law, but conceding the occasion, whether the comment or criticism was fair, was a question for the jury.

13. *Same.*—A statement in a newspaper published with reference to a public officer that he "preys upon the poor and unfortunate" was libelous per se when wholly without foundation so far as shown.

14. *Same; Mitigation of Damages.*—Under the general issue in an action for damages, defendant may prove the truth or partial truth of any of the alleged defamatory matter in mitigation of damages.

15. *Same; Evidence.*—Where a newspaper charged a constable with proceeding improperly under a writ, the court papers in the action in which the writ was issued were admissible in an action for libel, to show the fact and character of the proceeding in connection with which plaintiff was charged with official impropriety.

16. *Same.*—A letter written by plaintiff to defendant concerning the publications complained of, and giving plaintiff's version of the transaction, was legal evidence both for and against him when offered by defendant.

17. *Grand Jury; Nature; Function.*—Although a grand jury is a constituent part of the court to which it is attached, it is also a distinct and partly independent body, and its functions are of a judicial nature, although ex parte.

18. *Same; Duty as to Public Officer.*—It is the duty of a grand jury to investigate any alleged misconduct or incompetency of a county officer, and if they find that he ought to be removed under section 7099, Code 1907, to report the same to the court which report must be entered on the minutes as prescribed by section 7124, Code 1907; if the jury fails to find an impeachable fault or offense, it is neither required nor authorized to report the result of its investigations.

19. *Evidence; Hearsay; Res Inter Alios Acta.*—Where a defendant newspaper published certain observations of "a citizen" concerning plaintiff, which were written by a witness for defendant who had no connection either with defendant or the newspaper, a question asked him on cross-examination if he had not told several persons that his article referred to plaintiff, was not only objectionable as hearsay, but as calling for matter res inter alios acta.

20. *Appeal and Error; Record; Matters Shown.*—Where the record fails to show the grounds on which a plea was demurred to, it will be presumed on appeal that the demurrers did not reach the defects in the pleas, where they were overruled by the trial court.

21. *Same; Harmless Error; Pleading.*—Where a replication to a plea of privilege alleged that defendant's comment was not reasonable or fair, and was not confined to fair comment on the alleged fact, and also set up additional facts, it was no more than a denial of one of the necessary averments of the plea, and plaintiff was not injured by the elimination of the replication, as a special reply.

[Parsons v. Age-Herald Pub. Co.]

APPEAL from Jefferson Circuit Court.

Heard before Hon. JOHN C. PUGH.

Action by W. M. Parsons against the Age-Herald Publishing Company for damages for libel and slander. Judgment for defendant, and plaintiff appeals. Reversed and remanded.

The charges referred to are as follows:  (1) Affirmative charge not to find for defendant on special plea 4. (2) Same as to special plea 5.  (3) Same as to special plea 6. (4) "If you believe the evidence, you cannot find for defendant on its special plea 10."

GASTON & PETTUS, for appellant.  The court erred in overruling demurrers to special plea 4, and in refusing to give the general charge as to this plea, and this raises the question whether the language complained of was privileged.—25 Cyc. 572; *Lawson v. Hicks,* 38 Ala. 286; *Phillips v. Bradshaw,* 167 Ala. 209.  The grand jury was without authority to make or file the report as it found no impeachable offense under section 7099.—20 Cyc. 1334-5-7; sec. 7124, Code 1907; 25 Cyc. 350 and 408; 20 L. R. A. 533; 17 A. & E. Enc. of Law, 1277; 18 Ib., 942, 1042.  The same is true of the 5th plea, the 6th and 7th pleas.—25 Cyc. 420, and authorities supra.  The court was in error in admitting the papers in the case referred to, and in refusing the charges requested.—Authorities supra.

NATHAN L. MILLER, for appellant.  The court properly overruled demurrers to the plea as each showed the publication of judicial proceedings with fair and reasonable comment, and the publication was at least qualifiedly or conditionally privileged and not actionable without proof of actual malice on the part of the publisher.—*Lawson v. Hicks,* 38 Ala. 279; 51 S. E. 756; 19

L. R. A. (N. S.) 862; 16 L. R. A. (N. S.) 953; 37 Super. Ct. 42; 13 N. W. 773; 27 Cyc. 407-8, and notes; Newell on Defamation, 544-549, 564-574. On these authorities the court was without error in sustaining demurrers to the replication. Papers in the case were properly admitted.—Secs. 5745-46, Code 1907. So also was the letter complained of. The testimony of the witness Clark was hearsay and res inter alios acta. The court properly refused the affirmative charge as to plea 4.—25 Cyc. 547. The evidence was sufficient to justify the inference that the publisher believed the statement published to be true.—*Sledge v. Scott,* 56 Ala. 202; *Brewer v. Watson,* 71 Ala. 299; *Baker v. Trotter,* 73 Ala. 277; *McCormick v. Joseph,* 77 Ala. 236.

SOMERVILLE, J.—The plaintiff, a constable of Jefferson county, sued the defendant, as publisher of a daily newspaper published in Birmingham, for the publication in its columns of certain alleged libels. Defense was made under pleas of the general issue and privilege, and there was verdict and judgment for the defendant.

Two questions of controlling importance are presented by the pleadings and evidence. The first and second counts of the complaint charge the false and malicious publication concerning plaintiff of the following matter: "In connection with official acts we feel called upon to give an expression of censure to one of our constables, M. W. Parsons, whom evidence shows has perverted the uses of his office, and made it a means of oppression, having at one and the same time acted as a constable, a clerk of the court and attorney, for each of which three services he received compensation. We do not feel that the evidence warranted an impeachment in this case, and we can therefore only express our deep condemnation for such acts."

The third count is based upon the following matter: " 'Many persons will approve that portion of the grand jury report which deals with reprehensible acts of constables and justices of the peace,' said a citizen who is familiar with some of the doings of this class of officers, 'I know of some very outrageous acts by some of these officers, and in some instances they should have been sued on their bonds. One young woman who had been humiliated and dragged into an inferior court should have sued the constable for his acts. And the more one of these razorback limbs of the law added insult to injury in an effort to cover the constable's bad break, I think there will be found a way to impeach this officer of the law who preys upon the poor and unfortunate. Any constable so discredited as to be declared by a grand jury so reprehensible as to barely escape impeachment should resign.' "

The fourth plea, interposed to the complaint as a whole, and to each count separately, avers that the matter complained of was a part of the official report of the grand jury for Jefferson county, made in writing to the criminal court of said county and reported thereto in open court by the foreman of said jury; that said matter was a part of a fair, accurate, and impartial report of the proceedings in said court on November 17, 1909; that said publication was not made by defendant for the purpose of injuring plaintiff, but was made in pursuance of its duty to give publicity to said official document, of which the public had a right to be informed; and that said publication was made bona fide, without malice, and in the belief that said matter was true.

The tenth plea, interposed to the third count only, avers that the publication complained of was a fair and reasonable comment by a reputable citizen of Birmingham concerning the conduct of public officers and public

offices; that as publisher of a newspaper it was defendant's duty to publish such comments made by itself or by reputable citizens; that this publication was made without malice or any intention to injure plaintiff, and in the belief that the matters alleged were true; and that they were published in the interest of the public and the proper administration of public affairs.

Demurrers impeaching the sufficiency of these pleas were overruled by the court.

It is a principle everywhere recognized that a fair and accurate report of "judicial proceedings," published in good faith for the purpose of informing the public, and not for the purpose of injuring the persons concerned, is privileged, and the publisher immune against liability, though the report contain matter that is false, defamatory, and injurious.—*Gazette Printing Co. v. Shallow,* 41 Can. Sup. St. 339, 15 Ann. Cas. 610, citing the English authorities; Odgers on Libel & Slander (4th Eng. Ed.) 291; *Brown v. Globe Printing Co.,* 213 Mo. 611, 112 S. W. 462, 127 Am. St. Rep. 627.

It is also settled in this state, as in most jurisdictions, that newspapers have no peculiar privileges of publication, and are subject to liability for libel just as ordinary persons are.—*Wofford v. Meeks,* 129 Ala. 349, 356, 30 South. 625, 55 L. R. A. 214, 87 Am. St. Rep. 66; *State v. Shepherd,* 177 Mo. 205, 76 S. W. 79, 99 Am. St. Rep. 624; *Negley v. Farrow,* 60 Md. 158, 45 Am. Rep. 715; *Williams Pint. Co. v. Saunders* (Va.) 73 S. E. 472.

So, newpapers, like persons, may discuss and criticise the conduct and motives of public officers without liability, if their comments are fair and reasonable. But for false aspersions upon their character newspapers and individual persons are equally liable, and the publisher of a libel upon a public official is without privilege, and can justify his publication only by proving that it is

true.—*Wofford v. Meeks,* 129 Ala. 349, 356, 30 South.
625, 55 L. R. A. 214, 87 Am. St. Rep. 66; *McAllister v.
Detroit Free Press Pub. Co.,* 76 Mich. 338, 43 N. W. 431,
15 Am. St. Rep. 318, and note, 349; *Triggs v. Sun Print-
ing, etc., Ass'n,* 179 N. Y. 144, 71 N. E. 739, 66 L. R. A.
612, 103 Am. St. Rep. 841, 1 Ann. Cas. 326.

The sufficiency of the quoted pleas must be tested in
the light of these settled principles. If the fourth plea
presents a good defense to the first and second counts, it
must be upon the assumption that the official report of
a grand jury, made to the court of which it forms a part,
in open session, is such a "judicial proceeding" as comes
within the rule of privilege with respect to such proceed-
ings; or else that the public act of a public body, such as
a grand jury, with respect to matters of public concern,
is itself within the policy of the privilege, though in ex-
cess of the functions or duties with which it is clothed
by law. And if the tenth plea presents a good defense to
the third count, it must be upon the assumption that the
statements therein charged are "fair and reasonable
comments" upon the conduct of a public officer with re-
spect to matters which concern the public, and not libel-
ous statements of fact. These two propositions are vital
to the whole case, and we have given them very deliber-
ate consideration.

Though there has been some dissension of opinion, it
seems to have been the common-law rule in England
that the privilege attached to the report and publication
of judicial proceedings extends to ex parte proceedings.
—*Gazette Printing Co. v. Shallow, supra;* Odgers on Li-
bel & Slander, p. 292. Nevertheless, such proceedings
must have been taken or held "in open court," by which
is meant any place where the court sits or exercises its
jurisdiction, and from which the public are not exclud-
ed.—*Kimber v. Press Association* (1893) 1 Q. B. 65;

*Metcalf v. Times Pub. Co.,* 20 R. I. 674, 40 Atl. 864, 78 Am. St. Rep. 900.

These principles prevail very generally in the United States, and the great weight of authority sustains the view that the publication of pleadings or other preliminary papers to which the attention of no judicial officer has been called and upon which no judicial action has been invoked is not within the privilege accorded to the publication of judicial proceedings in the absence of any statute modifying the rules of the common law.—*Ilsley v. Sentinel Co.,* 133 Wis. 20, 113 N. W. 425, 126 Am. St. Rep. 928. Such matters must have come up for public hearing or action in open court.—*Park v. Detroit Free Press Co.,* 72 Mich. 560, 40 N. W. 731, 1 L. R. A. 599, 16 Am. St. Rep. 544; *Nixon v. Dispatch Print. Co.,* 101 Minn. 309, 112 N. W. 258, 12 L. R. A. (N. S.) 188, 11 Ann. Cas. 161; *Cowley v. Pulsifer,* 137 Mass. 392, 50 Am. Rep. 318.

A grand jury is said to be a constituent part of the court, though it is also a distinct and partly independent body.—*Finley v. State,* 61 Ala. 204; *Fields v. State,* 121 Ala. 16, 17, 25 South. 726. And its functions, though always proceeding ex parte, are obviously of a judicial nature.

It is the duty of every grand jury to investigate any alleged incompetency or misconduct of any public officer in the county; and, if they find that any county officer ought to be removed from office for any impeachable offense named in section 7099 of the Code, they shall so report to the court, "setting forth the facts, which report shall be entered on the minutes of the court."— Code 1907, § 7124; *State v. Savage,* 89 Ala. 1, 7 South. 7, 183, 7 L. R. A. 426.

They are neither required nor authorized by any statute to report the result of such investigations when they

[Parsons v. Age-Herald Pub. Co.]

fail to find any impeachable fault or offense; and when they report and criticise any misconduct, real or fancied, of lesser grade, it cannot be for the purpose of invoking any judicial action, and is in fact no part of any judicial proceeding, actual or potential. Of course, these observations do not apply to the duties specially enjoined upon the grand jury by law to examine and report upon the several public matters named in sections 7287-7292 of the Code, with which we are not here concerned.

Our conclusion is that that part of the grand jury's report dealing with the official conduct of the plaintiff was no part of any "judicial proceeding" within the rule of qualified privilege recognized by the common law in respect to the publication of such proceedings, and that it is not privileged as being the publication of a report required or authorized by law.

Nevertheless, we think its publication by the defendant, under the conditions averred in the plea, is within the spirit and policy of that rule. The grand jury is essentially a public body, and what it says or does in regard to public matters, though stopping short of indictment or impeachment, is a matter of public interest; and, with respect to the official conduct of public officers in the county, is a matter of such public concern as to justify its communication to the public for the information, through the public press or other appropriate agencies.

We cannot overlook the fact, which is a matter of common knowledge, that grand juries in this state have immemorially exercised this form of supervision over the official conduct of county officers, and have from time to time admonished them of alleged official misconduct, and criticised them for supposed official improprieties, and have brought such matters to the attention of the

public, as a part of their general report to the court. This practice has the sanction at least of general custom, and may perhaps be justified by considerations of public welfare or necessity. Doubtless it has exercised a very wholesome influence upon the conduct of many public officers, and has been, on the whole, of vast benefit to the government and to the people—although it may have occasionally resulted in injustice to individuals.

The extension of the old English rule to public reports of public bodies, within the general sphere of their authorized or customary activities, has been long recognized in Massachusetts.—*Barrows v. Bell,* 73 Mass. (7 Gray) 301, 66 Am. Dec. 479; *Kimball v. Post Pub. Co.,* 199 Mass. 248, 85 N. E. 103, 19 L. R. A. (N. S.) 862. In *Barrows v. Bell, supra,* it was said, per Shaw C. J., that, "whatever may be the rule as adopted and practiced in England, we think that a somewhat larger liberty may be claimed in this country and in this commonwealth, both for the proceedings before all public bodies, and for the publication of those proceedings for the necessary information of the people.'

In 18 Am. & Eng. Ency. Law (2d Ed.) 1046, the consensus of the authorities is thus stated: "While it has been held that the publication of matter defamatory of an individual is not privileged merely because the libel is contained in a fair report in a newspaper or pamphlet of what occurred at a meeting held for a public pupose, yet it seems to be the prevailing rule that proceedings, if of public interest, need not be those of a judicial or legislative body to render a fair report thereof privileged."

In applying this general rule to cases like the present, discrimination is necessary; and we observe: (1) That libelous imputations in a grand jury's report upon private citizens, or upon public officers, not touching their fitness for office or their fidelity to the public service, or

the propriety of their official acts, are not properly matters of public interest; (2) that the privilege does not attach at all until the report has been duly published by the grand jury itself in open court; and (3) that matters, the publication of which is forbidden by law, or by the order of the court as being improper for publication, are not to be regarded as privileged with respect to their publication by third persons.

The law on this subject is, we conceive, a compromise between private rights and the public good, and other cases must be decided as they arise, with a due regard for these conflicting interests.

We hold that the demurrers to the fourth plea were properly overruled, and that the charges of the court upon the issues therein formulated were correct statements of the law applicable thereto.

By comparison with the fourth plea, it seems that the sixth and seventh pleas were defective in not showing that the grand jury report had been presented and published by them in open court, but the defect is not pointed out by the demurrers.

It is to be observed in this connection that, while the fairness and accuracy of the published report is in general a question for the jury, yet, where the matter published is a verbatim report of the original matter, without comment or criticism, it must be deemed fair and accurate as a matter of law.

We come now to the consideration of the issues presented by the third count of the complaint, the tenth plea interposed as a defense thereto, and the replications.

The minute entry shows that demurrers to this plea were considered and overruled; but the record does not show what the grounds of demurrer were, and hence we are bound to presume in favor of that ruling that the grounds assigned to this plea were without merit.

15—181

Of the four replications filed by plaintiff, the only one applicable to this plea is the third : "The said comment published by the defendant or the citizen was not confined to such comment upon the alleged facts, but sought to set up additional facts." This is no more than a denial of one of the necessary averments of the plea, and its elimination as a special reply was without prejudice to plaintiff.

Fair comment upon the conduct of public men, when made in good faith without malice, is said to be privileged. But a very just distinction is drawn between fair comment and libelous statements of fact, and "the right to criticise does not embrace the right to make false statements of fact, to attack the private character of a public officer, or to falsely impute to him malfeasance or misconduct in office."—25 Cyc. 403. The privilege is limited to comment or criticism, and must be with reference to admitted or proven facts or conduct. Such comment should not go beyond the expression of legitimate inference, conclusion, or opinion, based upon such matters; and, if it does, it cannot be regarded as fair.—*Risk Allah Bey v. Whitehurst,* 18 L. T. 515; *Davis v. Shepstone,* 11 App. Cas. 187, 190; *Triggs v. Sun Printing, etc., Ass'n,* 179 N. Y. 144, 71 N. E. 739, 66 L. R. A. 612, 103 Am. St. Rep. 841, 848, 1 Ann. Cas. 326; *Coleman v. MacLennan,* 78 Kan. 711, 98 Pac. 281, 20 L. R. A. (N. S.) 361, 130 Am. St. Rep. 390, 411; *Upton v. Hume,* 24 Or. 420, 33 Pac. 810, 21 L. R. A. 493, 41 Am. St. Rep. 863, 867; *Burt v. Adv. Newspaper Co.,* 154 Mass. 242, 28 N. E. 1, 13 L. R. A. 97; *Negley v. Farrow,* 60 Md. 158, 45 Am. Rep. 715; *Hamilton v. Eno,* 81 N. Y. 116.

Whether the libel complained of may fall within this rule of privilege is a question of law for the court; and, conceding the occasion, whether the comment or criti-

cism is fair is a question of fact for the jury, under proper instructions from the court.

The libelous matter set out in the third count contains, besides a general allusion to the grand jury report, specific charges of reprehensible conduct, viz., "One young woman who had been humiliated and dragged into the inferior court should have sued the constable for his acts," and, "I think there will be found a way to impeach this officer of the law who preys upon the poor and unfortunate." The tenth plea avers that this was fair and reasonable comment concerning public offices and public officers, and hence conditionally privileged.

So far as the first of the quoted statements is concerned, the evidence shows that it referred to the acts of plaintiff, as constable, in the execution of a certain writ of attachment in the case of *Seawright v. Taylor,* in the inferior court. It appears that the "young woman" referred to had rented a bed to the "citizen," and it was, when taken by the constable under the writ, in the house of the defendant in attachment where the citizen was a lodger; and it further appears that the attorney for the plaintiff in attachment directed the constable to make the levy, and instructed him to hold it until the claim made to it was tried and determined by law, and that the young woman's claim suit afterwards interposed resulted in a judgment in her favor for the bed.

On these facts it was for the jury to say whether the comment in question was fair and reasonable, or otherwise.

On the other hand, the charge that plaintiff, as constable, "preys upon the poor and unfortunate," is, so far as the evidence shows, wholly without foundation and is not even referable to any alleged conduct by such officer. It is a general and sweeping charge of obnoxious and disgraceful abuse of official power, with the imputation of

evil and unworthy motives.   As matter of law, it falls outside of the scope of comment and criticism, as we understand their field of operation; and, it being clearly libelous per se, and there being neither plea nor proof of its truth, plaintiff was on the whole pleading and evidence entitled to recover under his third count, if in fact the language was spoken of plaintiff, and capable of being so understood by those who knew him—questions of fact on the evidence adduced.

In this view of the case, the trial court erred in refusing to give at plaintiff's request in writing an instruction to the jury that they could not find for defendant on the tenth plea, if they believed the evidence.

The same instruction might well have been given as to the fourth and fifth pleas, in so far as they answered the third count.   But the instructions requested (1, 2, and 3) were not thus restricted, and hence were properly refused.

Under the general issue in mitigation of damages defendant could show the truth or partial truth of any of the alleged defamatory matter.—25 Cyc. 479B(2).   To this end the court papers in *Schillenger v. Stow* were admissible to show the fact and character of such proceedings, in connection with which plaintiff was charged with official improprieties.

There was no error in the admission of the letter written by plaintiff to defendant in regard to the publications complained of.   It gave his version of the transaction, and was legal evidence against him or for him when offered by the other party.

The observations of "a citizen," as set out in the third count, were written by one Clarke, who was not in any way connected with defendant or its newspaper.   Testifying as a witness for defendant, plaintiff asked Clarke on cross-examination if he had not afterwards told sev-

eral persons that his article referred to plaintiff. There was nothing in the witness' direct testimony that could justify this question, and not being an agent or servant of defendant, nor in its service at the time of the state- -ment inquired about, that statement was as to this defendant merely hearsay and res inter alios acta, and not admissible in evidence.

Other questions raised on charges and evidence will not be discussed, as they may not arise again.

For the error above pointed out, the judgment will be reversed, and the cause remanded.

Reversed and remanded.

DOWDELL, C. J., and McCLELLAN and SAYRE, JJ., concur.