## HARRISON W. CONNER *vs.* STANDARD PUBLISHING COMPANY.

Suffolk. March 11, 1903. — June 11, 1903.

Present: KNOWLTON, C. J., LATHROP, BARKER, HAMMOND, & LORING, JJ.

*Libel. Evidence. Fire Marshal. Practice, Civil,* Exceptions. *Words,* "Refused."

In support of the defence of truth to an action for libel, it is sufficient for the defendant to show that the statements in the alleged libel were true in substance.

If the answer of a witness to a question calling for a categorical answer is stricken out as not responsive, but to a subsequent question the witness answers that the explanation stricken out conveys his meaning better than either yes or no, this restores his first answer as evidence.

A statement in an alleged libel, that an insurance company "refused" to insure the plaintiff's property again, is proved by evidence that the representative of the insurance company had given orders in the office not to take any more insurance for the plaintiff, without proof of a request for further insurance on the part of the plaintiff.

A statement in an alleged libel that an insurance company refused the plaintiff insurance and considered his property "peculiarly susceptible to fire", without an innuendo in the declaration to that effect is not to be treated as a statement that the plaintiff intentionally burned his property for the purpose of obtaining insurance, especially if this point was not taken at the trial.

The provision of St. 1896, c. 303, that the record of a fire marshal, including his statement of the origin of the fires, "shall at all times be open to public inspection", makes it a public record and its publication privileged.

In justification of an alleged libel a defendant put in evidence an envelope produced from the fire marshal's office on the back of which was written an entry after each of the words, Number, Name, Location, Date, Time and Cause, and under the word "Remarks" was entered an expression of opinion as to the origin of the fire. This memorandum was undated and unsigned, and it did not appear

in whose handwriting it was. The fire marshal's stenographer testified that the memorandum on the outside of the envelope was the finding of the fire marshal in the case in question and the only finding of the fire marshal in that case. *Held,* that the memorandum was identified sufficiently as the record of the fire marshal under St. 1896, c. 303.

A fair statement in a newspaper of the proceedings in a municipal court on a complaint against a certain person and of the record of the Superior Court that no bill was found against him by the grand jury is privileged. And if the publication states that the case was nol prossed, instead of stating that no bill was found by the grand jury, this does not make the account of the proceedings unfair, as each signifies a disposition of the case without a final adjudication on the merits, and the substance of the statement is the same whether the result was brought about by the action of the district attorney or of the grand jury.

Where in an action for libel the record of a police inspector had been admitted improperly against the plaintiff's objection, but was identical with a record of a municipal court which also had been admitted and was admissible, it was held that the plaintiff could not have been harmed and had no ground for exception.

Under our statutes allowing recovery for the publication of libellous words although true if actual malice is proved, in a case where it does not appear that the plaintiff made no contention of actual malice and where all the evidence is not reported, an exception to the admission of evidence showing the defendant's sources of information will not be sustained.

TORT for an alleged libel set forth in the opinion of the court. Writ dated November 29, 1898.

At the trial in the Superior Court before *Bell,* J., the jury returned a verdict for the defendant. The plaintiff alleged exceptions, the questions raised by those that were argued being stated by the court.

*C. W. Bartlett,* (*E. H. Talbot* with him,) for the plaintiff.

*S. L. Powers,* for the defendant.

LORING, J. This is an action of tort for libel founded on the publication in the defendant's newspaper in Boston of this statement concerning the plaintiff:

## " TRYING TO ORGANIZE A BOSTON COMPANY.

" A circular was received this week by nearly all the fire offices on the street, as well as by a number of business men, purporting to be a sort of prospectus for a new fire insurance company, which one H. W. Conner, of this city, has under contemplation.

" About four years ago Mr. Conner represented the St. Paul Fire & Marine as marine agent, and his connection with the fire end of the business has been through a few sub-agencies. It is understood that he proposes to call his company the Indemnity Fire.

"With some of the fire companies Mr. Conner is particularly well known, so much so, in fact, that they have refused to again place insurance on his property, which, it is thought, is peculiarly susceptible to fire.

"On December 16, 1895, the summer home of a Harrison W. Conner, at Harwich, Mass., was burned. Again, on July 19, 1897, the place at 9 Hastings Street, this city, said to belong to the same Mr. Conner, suffered a fire, the origin of which was reported by the State fire marshal's office as 'incendiary,' and the remarks accompanying the official report on this fire, on file at that office, read as follows:

"'Am decidedly of the opinion that it was caused by Conner, as this house was unoccupied at the time. I have no doubt there was over insurance to a great extent. Conner is an insurance agent, and has had two previous fires, one in Chelsea, where he had a yacht burned under suspicious circumstances on which he collected insurance, also one at Harwich, which I have no doubt was of incendiary origin. I consider him a dangerous man for fire risk.'

"At the police inspectors' department there is on file a case also against a Harrison W. Conner, wherein he was arrested on the complaint of Josiah W. Beckford for selling property assigned to him to save it from going into the possession of the assignee. This case, however, was *nol prossed*. If this Harrison W. Conner referred to by the fire marshal and the police department is the same one who is endeavoring to organize a new fire insurance company in this city, his efforts will not meet with much success."

It appeared that on December 16, 1895, the property of the plaintiff at Harwich, Mass., was burned, and nineteen months after, on July 19, 1897, the plaintiff's property at 9 Hastings Street in the West Roxbury district of Boston, was also burned. At the time of the first fire, the plaintiff had policies covering both properties issued by the German-American Insurance Company. The insurance policy on the Harwich property covered a house, a stable and carriage house attached, flag pole, boat landing, outbuildings, "walk, etc.," together with the furniture in the house. Nothing was burned but the house and a part "of a boat landing steps." After the first fire the insurance company cancelled the policy on the plaintiff's property at Harwich,

then remaining unburned, and returned to the plaintiff a *pro rata* share of the premiums paid by him for that policy. The plaintiff did not request the German-American company again to place insurance on his property, but took out a new policy on the Hastings Street property from the Royal Insurance Company. The German-American Insurance Company's policy on the Hastings Street property was not cancelled by the insurance company but continued in force until the Hastings Street fire in 1897.

The article was written by one Wilson, and he testified that it was based on information given him by Mr. Hill, Mr. Rogers and Mr. Field. ' Mr. Hill was an insurance adjuster, who adjusted the loss at this fire and that at the subsequent fire on the plaintiff's property at Hastings Street, West Roxbury. He testified that he knew as a matter of fact that certain insurance companies after the West Roxbury fire declined to grant insurance to the plaintiff; and while he had now no memory of telling Wilson of that, yet he was talking with Wilson when that matter was fresh in his memory.

Mr. Rogers, the representative of the German-American Insurance Company, testified: "We were dissatisfied with the causes, or with the findings of the causes, of that fire; and I had given orders in the office not to take any more insurance for that party."

1. The plaintiff's first contention is that the jury should have been instructed in accordance with his request "that there is no evidence of the truth of the allegations of the alleged libel that with some of the fire companies the plaintiff is particularly well known, so much so, in fact, that they have refused to again place insurance on his property, which it is thought is peculiarly susceptible to fire."

The jury were told: "You are to go through these and compare them with the evidence, and see whether the statements made here, compared with the facts as the evidence · discloses them to you, are true, are substantially true. I don't say that they must be actually and literally true, because the difference may be a difference of no consequence. Suppose I should charge some man with stealing a bay horse, and when I come to court to justify it should prove to be a white horse, there would be no earthly difference in the charge, and I should prove it substan-

tially, if I should prove that the horse was a white horse instead of a bay horse. And so other minor things were charged; fix the real gist of the charge. Suppose this house which was said to be 9 Hastings Street should prove to be 21 Hastings Street, that would be an illustration of an immaterial error; the matter would be substantially true, although he got the wrong number of the house by some few numbers. Now, if these facts are substantially true, which he has alleged in going through them and comparing the words which he used here with the evidence you heard upon the stand, if they are substantially true then the defendant has made out that defence."

The instruction as to its being enough to prove that the things written were in substance true was right. *Rutherford* v. *Paddock,* 180 Mass. 289, 291. *Golderman* v. *Stearns,* 7 Gray, 181. *Morrison* v. *Harmer,* 3 Bing. N. C. 759. *Edwards* v. *Bell,* 1 Bing. 403, 409.

The jury had before them Rogers's testimony that he gave orders not to take any more insurance for the plaintiff. We mention this because his counsel seem to assume the contrary in their brief. The answer was first stricken out as not responsive, but in answer to a subsequent question the witness testified that the explanation that he had made covered his answer better than either yes or no. That put the previous answer in evidence.

The plaintiff's contention is that this was not enough because the libel stated that the insurance company " refused " and a refusal implies a request. But in our opinion an outward act manifesting the insurance company's determination not to insure property of the plaintiff is proof of the substance of the statement complained of.

The plaintiff's next contention is that " it is not a sufficient justification to prove that the companies refused insurance, and considered the plaintiff's property ' peculiarly susceptible to fire.' The insinuation and imputation, especially when taken with the remainder of the libel, is that the plaintiff intentionally burned his property for the purpose of obtaining insurance. This insinuation and imputation must be justified by the defendant as fully as if this were the direct allegation of the libel." No innuendo to that effect was laid in the declaration, and no such question was raised at the trial; it is not open here.

2. The defendant put in evidence an envelope produced from

the fire marshal's office, on the back of which was written : "Number, 3395. Name, Harrison W. Conner. Location, 9 Hastings Street, Boston. Date, July, 1897. Time, 3.06 A. M. Cause, Incendiary." " Then followed the word ' Remarks,' after which came the words of that part of the libel beginning 'Am decidedly of the opinion,' etc. This memorandum was undated and unsigned. It did not appear in whose handwriting the memorandum was."

The fire marshal's stenographer testified " that the memorandum on the outside of the envelope was the finding of the fire marshal in the case of the Harwich fire, and the only finding made by the fire marshal in that case."

We are of opinion that this was sufficiently identified as the record of the fire marshal that the provision of St. 1896, c. 303, declaring that the " record shall at all times be open to public inspection " made it a public record, and that as such the publication of it was privileged. It was not necessary to prove that the hearings before the fire marshal were public. The proceeding was a quasi judicial one, and a fair report of it was privileged at any rate when the proceedings were finished and the record made up. *Barrows* v. *Bell*, 7 Gray, 301. *Howland* v. *Maynard*, 159 Mass. 434.

3. A fair statement of the proceedings of the municipal court on the complaint brought against the plaintiff and the record of the Superior Court that no bill was found against him by the grand jury were privileged. *Barrows* v. *Bell*, 7 Gray, 301. *Usill* v. *Hales*, 3 C. P. D. 319. The publication held in *Cowley* v. *Pulsifer*, 137 Mass. 392, relied on by the plaintiff not to be privileged was the publication of a petition before any action had been taken on it by the court. The plaintiff contends that the publication of the proceedings in the municipal court was not a fair one because the plaintiff was discharged by reason of no bill being found by the grand jury, and it was stated by the defendant that the case was nol prossed. Each signifies a disposition of the complaint without a final adjudication on the merits and the substance of the statement is the same whether that result is brought about by the action of the district attorney or of the grand jury.

4. The record of the police inspector should not have been admitted in evidence, but as it was identical with the record of

the municipal court which was admissible and was admitted, the plaintiff could not have been harmed.

5. The plaintiff's next contention is that the addition of unfair comments and statements of fact outside the record defeats the privilege. No such addition has been brought to our attention by him.

6. The next exception is to the admission of testimony of Wilson, the agent of the defendant, who wrote the article complained of as a libel. Wilson testified that he got the information on which the article was based from Mr. Rogers, the representative in Boston of the German-American Insurance Company, and from Mr. Hill, an insurance adjuster who adjusted the losses on the plaintiff's property at Harwich and West Roxbury, and one Field, a fire insurance man. This was admitted "on the question of whether the article was written honestly and in good faith."

At common law, the truth of the statement complained of is an absolute defence to an action of libel, and such evidence is not admissible, because it does not tend to prove the truth of the facts charged. This is the ground upon which Shaw, C. J. rests his opinion in *Sheckell* v. *Jackson*, 10 Cush. 25. But an act was passed in 1855, (St. 1855, c. 396,) which provided that the truth of the matter should not be a defence if a malicious intention was proved. It was held in *Perry* v. *Porter*, 124 Mass. 338, that the burden of proving malice was on the plaintiff, and in *Brown* v. *Massachusetts Title Ins. Co.* 151 Mass. 127, and *Fay* v. *Harrington*, 176 Mass. 270, that by malicious intention was meant malice in the popular sense of hatred or ill-will. In pursuance of the latter case, the words "actual malice" have been substituted in the act for the original words, "malicious intention." R. L. c. 173, § 91. In *Lothrop* v. *Adams*, 133 Mass. 471, the question whether evidence that the facts stated in the libel were currently reported to be true was admissible in evidence was left open. In that case the evidence was held to have been rightly rejected because the defendant did not offer to show that he knew of the reports when he published the libel. In *Burt* v. *Advertiser Newspaper Co.* 154 Mass. 238, which was an action of libel charging the plaintiff with fraud on the United States revenue customs, it was held not to be competent to put in evidence an *ex parte* report made to the Treasury Department, containing

similar charges, coupled with evidence that the writer of the article had these documents before him and believed the statements contained in them. But it appears from the bill of exceptions in that case that when the evidence was offered "the plaintiff was then allowed by the court, against the defendant's objection, to waive any claim of express malice on the part of the defendant, and to withdraw the evidence he had put in on that issue."

In the case at bar, it does not appear that the plaintiff made no claim of malice, and the bill of exceptions does not purport to set forth all the evidence. We are of opinion that this evidence was admissible on the issue of actual malice, and that no error is shown to have been made in admitting it in this case.

The other exceptions have not been argued, and we treat them as waived.

*Exceptions overruled.*