## HOOVER CO. v. SESQUICENTENNIAL EXHIBITION ASS'N et al.

District Court, E. D. Pennsylvania.  May 17, 1928.

### No. 4015.

**1. Courts ⊝347(1)—Equity rules relating to pleadings call for omission of evidence from which evidentiary facts may be found and evidentiary facts themselves (Equity Rule 25).**

Equity rule 25, commanding that pleadings in equity be confined to averments of ultimate facts, calls for omission of not merely the evidence from which evidentiary facts may be found, but likewise of evidentiary facts themselves, and calls for a statement of ultimate facts only.

**2. Equity ⊝275—Amended bill speaks as of original filing date.**

An amended bill speaks as of its original filing date.

**3. Equity ⊝295—Averment that defendant, since filing of opinion, misstated its purport through advertisements, could be brought upon record only by supplemental bill.**

Averment to effect that one of defendants, since filing of opinion of court, had made unfair use of opinion by misstating its purport and effect, and wholly misrepresenting it through advertisements, could be brought upon record only by way of supplemental bill.

**4. Trade-marks and trade-names and unfair competition ⊝68(1)—Court's rulings should be inserted in advertisements only after special leave of court, and should be restricted to purposes of giving notice to those concerned.**

Court's rulings are not proper subjects of promiscuous commercial advertising, and should be inserted in advertisements only after special leave of court, and should be restricted to purposes of giving notice to those concerned.

**5. Equity ⊝362—That association making prize award to codefendant through alleged conspiracy was not in existence at time of suit was not ground for dismissal of bill under averments.**

Where plaintiff, exhibitor at exposition, filed bill against exhibition association and competitor, to whom prize had been awarded, alleging that defendants had entered into conspiracy to procure award of superior merit to plaintiff's competitor, fact that there was at time of suit no association in existence to make award to plaintiff, which court was asked to decree, was not ground for dismissal of bill under its averments.

**6. Equity ⊝108—When refusal of something which should be done is result of unlawful conspiracy, all parties to conspiracy, including corporation, are properly joined in bill praying decree to have it done.**

When refusal of something which ought to be done is result of an unlawful conspiracy, all parties to conspiracy are properly joined in a bill praying for decree to have it done, and when officials who act for corporation are in conspiracy and corporation is otherwise properly a party, rule applies.

In Equity. Suit by the Hoover Company against the Sesquicentennial Exhibition Association and another. Sur motion to dismiss amended bill. Motion denied.

Wallace R. Lane, of Chicago, Ill., and Thomas Raeburn White, of Philadelphia, Pa., for plaintiff.

Edwin M. Abbott, of Philadelphia, Pa., for defendant Sesquicentennial Exhibition Ass'n.

Harry A. Mackey and George Klauder, both of Philadelphia, Pa., for defendant Eureka Vacuum Cleaner Co.

DICKINSON, District Judge.  This cause, complicated in itself in its beginnings, is now almost beyond the possibility of disentanglement. The grievances complained of by the plaintiff are so many and so interrelated directly or remotely to so many different acts in which sometimes the same and sometimes different persons had a part that a recital of them is beyond the reach of clear statement. With no hope of adequacy and little of accuracy in their statement, we will first attempt to broadly outline them, so as to disclose the legal and equitable principles which concern us, and follow this with a further attempt to analyze the specific averments of the amended bill and the grounds of the present motion to dismiss.

The broad complaint made is this:

The Hoover Company, the plaintiff, and the Eureka Vacuum Cleaner Company, one of the defendants, each had and has a carpet cleaning device. The Sesquicentennial Association, by public invitation, requested the above companies to exhibit their respective devices, upon the promise that the merits of each would be fairly judged and appraised, and the exhibitors given awards of merit in accordance with established rules and regulations, following the usual practices of like expositions theretofore and elsewhere held.

Responding to this invitation, and in reliance upon the promises made, the plaintiff, at some cost and expense, exhibited its device. The defendant company likewise put its device on exhibition. Instead of the fair and just treatment which the plaintiff had the right to receive, the awards were juggled in a way which bespeaks the grossest indifference to incurred obligations to exhibitors by some of those who had a part in what took place and the plainest fraud on the part of the Eureka Company and others. One result was that through this neglect and fraud (a part of which was forgery) the Eureka Company was given an award to which it had no claim of merit. Another result was the

merits of the Hoover device were first sought to be depreciated by awards which were expressive of inferior worth, and when this was corrected by the jury of award, by the grant of prizes in different classes, the rights of the plaintiff were ignored and denied by the refusal to issue the usual and promised certificate, and the further refusal to thus give effect to the correction of the wrong done. The wrong was made greater by the act of the Eureka Company in putting out grossly unfair and misleading advertisements, falsely stating that the Eureka Company had been given in competition an award of superior merit over the device of the Hoover Company. No one could escape the judgment that this is a recital of great and grievous wrongs, which, if proven, call for correction, if within the lawful powers of the court to so do.

By the bill as first filed we were asked: (1) To annul the award to the Eureka Company. (2) To restrain said company from advertising the award issued to them. (3) To order the Sesquicentennial Association to issue a grand prize award to the Hoover Company.

The law arising out of the averments of this bill we found to be: (1) A court of equity could not review the judgments of awards made, nor correct errors of judgment therein. (2) The plaintiff had no equitable interest in an award given to another non-competing exhibitor. (3) A bill could not be maintained against two or more defendants for separate, independent, and distinct causes of action, in the absence of any averment of conspiracy or other joint or concerted acts.

[1] The plaintiff thereupon amended its bill, which the defendants have met by a motion to dismiss the present amended bill. This takes us to its averments. The argument in support of the motion provokes a general comment. The bill is criticized, because its averments are charged to be inferences from facts, instead of statements of the facts from which these inferences are drawn. A justified criticism of this bill might well be made, directed not to the paucity, but the overfullness of the fact averments made. Equity rule 25 commands that the pleadings in equity be confined to averments of the "ultimate facts." These in their very nature are inferred from the evidentiary facts. The latter are found from the evidence and the former inferred from them. In this sense ultimate facts are reasoned conclusions, but they are none the less facts, although and because they are conclusions of fact. This bill avers

ultimate facts, but in many instances supports the averments by a statement of the evidentiary facts, and in some instances supplements these with the evidence from which they may be found. The equity rules call for the omission of not merely the evidence from which the evidentiary facts may be found, but likewise of the evidentiary facts themselves, and for a statement of the ultimate facts only.

[2] The inclusion of these unnecessary averments has led the plaintiff into an anomalous pleading situation. The present bill is an amended bill. In consequence it speaks as of its original filing date. Some of its fact averments, however, are of occurrences some time after the bill was filed. This makes of the bill, not an historical recital, but a prophesy. We restrict ourselves, however, to the motion before us, which is one to dismiss.

There is some uncertainty, and perhaps confusion, wrought by the use of different names of designation for the different official groups which had to do with the grant and issuance of awards. the story told by this bill, however, as we interpret its meaning, is, after omitting the features which may readily be implied, as follows:

The Hoover Company exhibited a device which was finally found to be in a class by itself and worthy of the award of a grand prize or other certificate of merit. The Eureka Company, an exhibitor in another class, promoted and entered into a conspiracy with officials of the Sesquicentennial and others to bring it about (1) that the device of the Hoover Company and its own should be made to appear as if competitors in the same class; (2) that an award of superior merit should falsely and fraudulently be procured to be issued to the Eureka Company, in such way as to carry the implication of a finding of superior merit in the Eureka device in comparison with that of the plaintiff; (3) that the issuance of the award of merit which had been earned by the Hoover Company and granted to it should be fraudulently withheld, and not issued; and (4) the final purpose and motive was to enable the Eureka Company to put out the deceptive and unscrupulously false advertisements which, as the unlawful fruit of the conspiracy, have been given wide circulation.

[3] There is added an averment which could not be a part of the bill, and, as we view it, cannot be made part of an amended bill, but could only be brought upon the record by way of a supplemental bill, to the effect that the Eureka Company, since the filing of the

opinion of the court, has made a most unfair use of the opinion by grossly misstating its purport and effect, and, wholly misrepresenting it through printed and widely circulated advertisements. We have not considered these later advertisements as at present in the case. They, of course, figured largely in the arguments at bar. The forced admissions, which the patent facts compelled counsel to make by their silence and otherwise, make it, we think, our duty to state that the advertising tactics resorted to by the Eureka Company cannot do otherwise than make a very bad impression upon the court.

No litigant can be permitted to indulge in any such misrepresentations of a court ruling, and no litigant who has any sense would do so. That there may be no repetition of it by any one in the future, let it be understood that this infraction of the plain proprieties will be taken into consideration and dealt with at the proper time.

[4] We hasten to add the unnecessary denial that there is any thought or suspicion on the part of any one that any of the counsel concerned in the cause would have been guilty of any such egregious folly. No publication (other than the formal reports of cases) ever did, and we venture the safe prophesy ever will, be able to give a fair, in the sense of an adequate and accurate, report of a judicial ruling. Every lawyer knows that even the syllabi of reported cases, carefully phrased by the trained minds of experts, are often misleading. Such rulings are not the proper subjects of promiscuous commercial advertising. There may be in exceptional cases need to advertise them. When there is such need, they should be inserted only after special leave of the court and be restricted to the purposes of giving notice to those concerned.

We do not wish these comments to be construed to be a finding of the guilt of this litigant, nor are we acquitting it. Its guilt or innocence will be determined at the proper time. We repeat that we have said what we have said, lest there may be a repetition of this highly objectionable form of advertising.

In reaching the conclusion which we have reached that the present motion should be denied, we have in mind that the averments of this bill do not link the two defendants with this conspiracy, and that the final decree of the court may be restricted to a ruling on the right of the plaintiff to the issuance of the award of merit which the Sesquicentennial Association officials granted to it, if any. The averments of the bill, however, do clearly charge that the withholding of this award was and is included in the aims of a conspiracy to which at least one administrative official of the association was a party, and because of this we cannot dismiss the bill.

It would seem to be clear that the thought of issuing to the plaintiff a grand prize or other award of merit in another class than that of the other company was a happy expedient, seized by the body which directed it to be done as the easiest and best way out of an unpleasant dilemma. Perhaps in this same thought may be found a way to end this litigation.

[5] The argument addressed to us on behalf of the Sesquicentennial Association is one, as we view it, which must await the determination of the facts. The final one may serve us as an illustration. It is that this bill should be dismissed, because there is now in existence no association to make the award which the court is asked to decree. This cannot possibly be a ground for dismissal of the bill under its averments. Moreover, the point made is not clear in view of what took place at the argument. The offer was made in open court that an award would be now made to the plaintiff, provided it ranked after that awarded to the Eureka Company. If one medal may be granted, another may. The other grounds are like unto this. Each one is really a fact averment.

The argument on behalf of the Eureka Company is in large part based upon an error. There is a prayer for relief against this company. Even if there were not, the cases to which we have been referred are cases in which the objection was that some one concerned had not been made a party. These two questions are closely allied, but are not at least always the same. If a cause could, with good cause, be set down under rule 43 for want of proper parties, the inclusion of such party could not be urged as a ground of dismissal. A party against whom no relief is prayed, and who makes no defense against the grant of the decree which is sought, might well ask to be relieved of or to be allowed costs. It, however, may well be, and often is, the case that the party against whom the relief is sought is willing to grant it, with the consent of a third party.

[6] The argument of this cause at bar again provides us with an illustration. One of the excuses (we use the word in no invidious sense) advanced by counsel for the other defendant not issuing to the plaintiff the grand prize in another class than that in which the Eureka Company was a competitor was that this could not be done without the con-

sent of the latter company, and the fact statement was made that the Sesquicentennial Association had offered to grant the prize demanded if the plaintiff secured this consent. This makes the propriety of including the latter company in the bill apparent because a decree with it as a party will be the equivalent of its consent. As far as we need now go is embraced in the proposition that, when the refusal of something which ought to be done is the result of an unlawful conspiracy, all parties to the conspiracy are properly joined in a bill praying a decree to have it done, and when the officials who act for a corporation are in the conspiracy, and the corporation is otherwise properly a party, the proposition holds good.

A formal decree, denying the motion to dismiss, may be submitted.