**ARTLOOM CORPORATION v. NATIONAL BETTER BUSINESS BUREAU, Inc., et al.**

District Court, S. D. New York.

April 1, 1931.

Clarke, Allen, Harper & Matthews, of New York City, and Fraley & Paul, of Philadelphia, Pa. (Frank B. Fox, of Philadelphia, Pa., of counsel), for plaintiff.

White & Case, of New York City, for defendants National Better Business Bureau, Inc., and Edward L. Greene.

Breed, Abbott & Morgan, of New York City, for defendant Better Business Bureau of New York City, Inc.

PATTERSON, District Judge.

This is a motion for preliminary injunction to restrain the defendants pendente lite from announcing to the plaintiff's customers and to the public generally the fact that the Federal Trade Commission has issued an order that the plaintiff cease and desist from using the word "Wilton" in describing one type of rug manufactured by it.

The plaintiff manufactures rugs. National Better Business Bureau, Inc., is a membership corporation whose aim is to promote truthfulness in merchandising and advertising. The Better Business Bureau of New York City, Inc., is also a membership corporation, with activities more local in extent. There are numerous similar bureaus scattered over the United States, independent of one another so far as control is concerned, but associated in the sense that they exchange information. It seems that several years ago a discussion arose between the plaintiff and the National Bureau as to whether certain rugs made by the former came within the definition of a Wilton rug.

It is not entirely clear who initiated the discussion, and I cannot see that it matters. The National Bureau submitted the point to the Bureau of Standards of the Department of Commerce and was advised by it that the plaintiff's rugs did not come within the specifications of a Wilton carpet as adopted by an association of manufacturers. A little later Better Business Bureaus in several cities issued circulars asking dealers not to advertise the rugs as Wiltons. It may be inferred that the National Bureau had communicated with the local bureaus on the matter. Thereafter the Federal Trade Commission instituted proceedings against the plaintiff. The plaintiff advised the National Bureau of the pendency of the proceedings and requested that further comment on its products be withheld until a decision should be handed down by the Commission. It appears that the National Bureau complied with the request and said nothing further. So much for the background of the case.

On February 9, 1931, the proceedings before the Federal Trade Commission culminated in an order that the plaintiff cease and desist from advertising its Bagdad rug as a Wilton rug. Two days later the plaintiff brought this suit, to enjoin the defendants from publishing or commenting upon his order to the plaintiff's customers, the trade and the public generally. A preliminary injunction is asked for. In support of the application, it is pointed out that the order of the Federal Trade Commission is not effective unless and until affirmed by the Circuit Court of Appeals, which is true in the sense that in the interim the plaintiff is not obliged to obey the order of the Commission; and it is said that the customers and the public do not appreciate this fact. The plaintiff's papers do not show whether it is now paying any attention to the order. It also appears that on March 2, 1931, while this application was pending, the Federal Trade Commission itself released to the press an announcement of the order, and that shortly afterward several newspapers, as well as other organizations issuing bulletins on business affairs, published the news that the order had been issued.

I have given careful consideration to the facts urged by the plaintiff and to the authorities marshaled in support of its position, but remain of the opinion, which I expressed at the oral argument, that on no possible view of the facts can a preliminary injunction be granted in this case. The parties have discussed whether a court of equity may enjoin a defendant from publishing a libel. While service is still being paid to the rule that a court of equity will not enjoin a threatened libel, a growing body of cases has established several exceptions or qualifications to the rule. For one thing, it is now generally recognized that charges of invalidity of a trader's patents and threats to sue his customers, when made under circumstances showing that there is no real intent to bring suit, will be enjoined. Emack v. Kane (C. C.) 34 F. 46; Farquhar Co. v. National Harrow Co. (C. C. A.) 102 F. 714, 49 L. R. A. 755; Adriance, Platt & Co. v. National Harrow Co. (C. C. A.) 121 F. 827; Racine Paper Goods Co. v. Dittgen (C. C. A.) 171 F. 631; Atlas Underwear Co. v. Cooper Underwear Co. (D. C.) 210 F. 347; Sun-Maid Raisin Growers v. Avis (D. C.) 25 F.(2d) 303. It is said that injunction in such cases is allowed because of the unfair competition feature found in the threats, that the libel is merely incidental and may therefore be enjoined without violating the usual rule. Again, libelous statements, coupled with advice to customers to break contracts, have been enjoined, although conceivably only the portion relating to the breach of contracts might have been restrained. American Malting Co. v. Keitel (C. C. A.) 209 F. 351; see Citizens' Light Heat & Power Co. v. Montgomery Light & Water Power Co. (C. C.) 171 F. 553. Still another line of cases stands for the proposition that, where a party to a trade dispute has published to customers of another or to the trade generally an account of a court proceeding which is garbled, misleading, and prejudicial, the continuance of such a practice may be enjoined and other relief given. Asbestos Shingle Co. v. Johns-Manville Co. (C. C.) 189 F. 611; Rollman Mfg. Co. v. Universal Hardware Works (C. C. A.) 238 F. 568; Gerosa v. Apco Mfg. Co. (C. C. A.) 299 F. 19; Price-Hollister Co. v. Warford Corporation (D. C.) 18 F.(2d) 129; Hoover Co. v. Sesquicentennial Exhibition Association (D. C.) 26 F.(2d) 821; Adjusta Co. v. Alma Mfg. Co. (D. C.) 36 F.(2d) 105; Gardner Sign Co. v. Claude Neon Lights, Inc., (D. C.) 36 F.(2d) 827. The explanation that the court acts in such matters to protect its own orders or decrees is hardly adequate, for sometimes the orders or decrees distorted by the offender have been those of other courts.

The reasonableness of the rule or alleged rule that equity will not enjoin a libel has been attacked by Dean Pound in a thought-

ful article in 29 Harvard Law Review, 640. He points out that the true inquiry in these cases should be whether the plaintiff has made out a very plain case of libel and of inadequacy of the legal remedy, just as in the case of other torts. If so, no substantial question of free speech or trial by jury is involved, and the plaintiff is entitled to an injunction, even to a preliminary injunction in a strong case. The necessity of inventing exceptions to the prevailing rule, to prevent a failure of justice, would thus be done away with and many of the authorities reconciled in result, though extreme cases like Boston Diatite Co. v. Florence Mfg. Co., 114 Mass. 69, 19 Am. Rep. 310, and Marlin Firearms Co. v. Shields, 171 N. Y. 384, 64 N. E. 163, 59 L. R. A. 310, would be abandoned. That the courts are in practice generally applying the test outlined by Dean Pound seems clear.

But whatever doubt there may be at the present day as to the jurisdiction of a court of equity to enjoin a future libel, I am convinced that the plaintiff here has not even the shadow of a case. For the threatened libel, if any, would be prima facie a privileged communication. The order of the Federal Trade Commission, directing the plaintiff to cease and desist advertising one of its rugs as a Wilton is a public record, made after a hearing before an administrative board to determine whether the plaintiff was using an unfair method of competition in commerce. Before commencement of proceedings, the Commission must be of opinion that an investigation "would be to the interest of the public." Act Sept. 26, 1914, § 5 (15 USCA § 45). If Congress had intended that the existence of such an order be kept confidential until its propriety should be questioned in court, it could and would have so provided. The plaintiff's statement that the order is a nullity without further action by the courts is not a fair characterization; it is much more than a nullity. Any newspaper in the land may publish such an order or a fair summary of it, provided it does so without express malice against the plaintiff. For such publication it could not be held liable for damages, much less enjoined in advance, and this irrespective of the truth of the facts stated in the order. The qualified privilege to publish such proceedings extends to administrative and legislative matters as well as to proceedings in court. Cresson v. Louisville Courier-Journal (C. C. A.) 299 F. 487; Conner v. Standard Co., 183 Mass. 474, 67 N. E. 596. And a newspaper's right to publish the result of such a proceeding is no greater than that of any other member of the community. Lawyers' Co-op. Publishing Co. v. West Publishing Co., 32 App. Div. 585, 52 N. Y. S. 1120. There is no proof of bad faith or malice on the part of any defendant and I certainly cannot say now that any communication which they may make in respect to the order will not be a fair summary of it. The position taken by the plaintiff, that it has the right to enjoin these defendants from publishing or announcing an order issued and made public by the Federal Trade Commission, or any similar public body, would establish an intolerable censorship over the right of free speech. It is not law and ought not to be law. The case bears no resemblance to Adjusta Co. v. Alma Mfg. Co., supra, and kindred cases. The feature in those cases was that the offender had flagrantly misstated the effect of a court order, and the injunction was against the continuance of the practice. Nor is there anything in the case which suggests a boycott or menacing conduct by the defendants.

The plaintiff has also set forth several matters tending to show that the order of the Commission may have been improper. For any errors by the Commission, the plaintiff has its statutory remedy by direct attack upon the order in the Circuit Court of Appeals. They cannot be considered here.

The application for a preliminary injunction will therefore be denied.